# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated,  )<br>)<br>) | |
| Plaintiff,  ) | Case No. _____ |
|  ) | |
| v.  ) | JURY TRIAL DEMANDED |
|  ) | |
| GLOBAL BRASS AND COPPER HOLDINGS, INC., JOHN H. WALKER, VICKI L. AVRIL, DONALD L. MARSH, JR., BRADFORD T. RAY, MARTIN E. WELCH, III, and RONALD C. WHITAKER,  )<br>)<br>)<br>)<br>)<br>) | CLASS ACTION |
|  ) | |
| Defendants.  ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on April 10, 2019 (the "Proposed Transaction"), pursuant to which Global Brass and Copper Holdings, Inc. ("GBC" or the "Company") will be acquired by Wieland-Werke AG and its affiliates.

2. On April 9, 2019, GBC's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Weiland Holdings, Inc. ("Parent"), Wieland-Werke Aktiengesellschaft ("Parent Holdco"), and Elephant Acquisition Corp. ("Merger Sub," and together with Parent, Parent Holdco, and Wieland-Werke AG, "Wieland"). Pursuant to the terms of the Merger Agreement, GBC's stockholders will receive $44.00 in cash for each share of GBC common stock they own.

3. On May 10, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of GBC common stock.

9. Defendant GBC is a Delaware corporation and maintains its principal executive offices at 475 N. Martingale Road, Suite 1200, Schaumburg, IL 60173. GBC's common stock is

traded on the New York Stock Exchange under the ticker symbol "BRSS." GBC is a party to the Merger Agreement.

10. Defendant John H. Walker is Chairman of the Board of the Company.

11. Defendant Vicki L. Avril is a director of the Company.

12. Defendant Donald L. Marsh, Jr. is a director of the Company.

13. Defendant Bradford T. Ray is a director of the Company.

14. Defendant Martin E. Welch, III is a director of the Company.

15. Defendant Ronald C. Whitaker is a director of the Company.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of GBC (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

18. This action is properly maintainable as a class action.

19. The Class is so numerous that joinder of all members is impracticable. As of April 5, 2019, there were approximately 21,952,777 shares of GBC common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

20. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

21. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other

members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

22. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

23. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

24. GBC, through its wholly-owned principal operating subsidiary, Global Brass and Copper, Inc., is a leading, value-added converter, fabricator, processor, and distributor of specialized non-ferrous products in North America.

25. The companies engage in metal melting and casting, rolling, drawing, extruding, welding, and stamping to fabricate finished and semi-finished alloy products from processed scrap, virgin metals, and other refined metals.

26. The companies' products include a wide range of sheet, strip, foil, rod, tube, and fabricated metal component products that they sell under the Olin Brass, Chase Brass, and A.J. Oster brand names.

27. Their products are used in a variety of applications across diversified markets, including the building and housing, munitions, automotive, transportation, coinage, electronics/electrical components, industrial machinery and equipment, and general consumer markets.

28. On April 9, 2019, GBC's Board caused the Company to enter into the Merger Agreement with Wieland.

29. Pursuant to the terms of the Merger Agreement, GBC's stockholders will receive $44.00 in cash for each share of GBC common stock they own.

30. According to the press release announcing the Proposed Transaction:

> Global Brass and Copper Holdings, Inc. (NYSE: BRSS) ("Global Brass and Copper" or the "Company" or "GBC") and Wieland-Werke AG ("Wieland Group") today announced that they have entered into a definitive merger agreement. Wieland is a nearly 200-year-old, family-owned global technology and service leader in the brass and copper industry, known for customer service and innovative solutions.
>
> Per the merger agreement, Wieland will acquire all of the outstanding shares of GBC in an all-cash transaction. GBC shareholders will receive $44.00 per share in cash representing a 27% premium to Global Brass and Copper's closing price as of April 9, 2019. The transaction is expected to close in the second half of 2019 and is subject to certain required regulatory approvals.
>
> The transaction brings together two highly complementary companies with diverse product offerings across copper and copper alloy strip and sheet, rod, foil, wire, tube and fabricated components, serving a wide variety of industries and creates a truly unique global leader in the red metals industry ideally suited to create customer value in North America, Europe and Asia.
>
> Additionally, both companies share a commitment to technology, R&D, and providing innovative offerings and solutions. This shared focus will enable the combined business to collaborate in unique ways with customers.
>
> The combined business will possess a leading manufacturing, service and distribution network consisting of over 90 facilities, and will share best practices to enhance all aspects of operational excellence and create a superior supply chain. Further, the company will be better positioned to benefit from a number of megatrends, including eMobility, connectivity, sustainability, and recycling. . . .

Terms and Financing

Under the terms of the merger agreement, which has been unanimously approved by the Board of Directors of Global Brass and Copper and the Supervisory Board of Wieland, Global Brass and Copper shareholders will receive $44.00 per share in cash, representing a 36% premium to Global Brass and Copper's 12-month average closing price and a 27% premium to Global Brass and Copper's closing price as of April 9, 2019.

The transaction is not subject to any financing condition; Wieland has secured appropriate financing facilities.

Expected Closing

The transaction, which is expected to close in the second half of 2019, is subject to the satisfaction of customary closing conditions, including customary regulatory approvals and the approval of Global Brass and Copper's shareholders.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33. The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan").

34. With respect to the Company's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) total adjusted revenue, (b) EBITDA, (c) EBIT, and (d) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

35. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the future standalone unlevered, after-tax free cash flows that the Company

was forecasted to generate from fiscal year 2019 through fiscal year 2021 and all underlying line items; (ii) the range of terminal values for the Company; and (iii) the individual inputs and assumptions underlying the range of discount rates from 8.25% to 9.25% and the terminal growth rate ranging from 1.0% to 2.0%.

36.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37.     The Proxy Statement also omits material information regarding potential conflicts of interest of J.P. Morgan.

38.     The Proxy Statement fails to disclose whether the Company will pay J.P. Morgan the "discretionary fee of up to approximately $3.4 million," as well as the circumstances under which such fee became or will become payable.

39.     The Proxy Statement fails to disclose the timing and nature of the services that resulted in Parent paying J.P. Morgan fees amounting to $0.2 million.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy

Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Company Board of Directors; (iii) The Merger — Certain Company Unaudited Financial Forecasts; and (iv) Opinion of the Company's Financial Advisor.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and GBC**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. GBC is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of GBC within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of GBC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.	Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: May 17, 2019

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*